Stanley BROWN, Movant,

v.

KENTUCKY BAR ASSOCIATION,
Respondent.

No. 2007–SC–000455–KB.

Supreme Court of Kentucky.

May 21, 2009.

## OPINION AND ORDER

Movant, Stanley Brown, whose last known bar roster address is 122 Westwood Drive, Richmond, Kentucky 40475, whose KBA Member Number is 83210, and who was admitted to the practice of law in the Commonwealth of Kentucky in 1989, has been ordered by this Court to show cause why he should not be subject to reciprocal discipline under SCR 3.435 based on his permanent disbarment in Ohio in 1997. With Brown having filed his response to the show cause order, this matter is now ripe for decision by the Court.

## I. Background

Brown was disbarred in Kentucky in 1995. The rules in effect at that time did not provide for permanent disbarment and allowed an attorney to seek reinstatement after five years. Brown was also a member of the Ohio Bar at the time. The Ohio Supreme Court imposed reciprocal discipline on Brown based on this Court's decision. As a result, Brown was suspended indefinitely from practicing in Ohio beginning in 1996 until such time as he was reinstated in Kentucky.

Brown was subsequently charged with additional misconduct in Ohio in 1997. *See Cincinnati Bar Ass'n v. Brown,* 78 Ohio St.3d 345, 678 N.E.2d 513 (1997). The Ohio Supreme Court described the facts of Brown's violations as follows:

> In December 1991, Dale Price retained respondent to pursue a malicious prosecution and defamation claim on his behalf, which respondent did in December 1993. Price was awarded a judgment of $1 because respondent did not provide evidence of damages. Price notified relator that respondent had filed an affidavit in a Kentucky action that

prior to July 7, 1994, he was suffering from manic depression and was not capable of performing as an attorney....

In April 1993, James Isaac hired respondent to obtain a reversal of a juvenile court contempt finding, reduce Isaac's support payments, and establish specific visitation rights for him. Respondent pursued and obtained only the first of these objectives....

After respondent filed a bankruptcy petition on July 5, 1994 for Robin Bryant and her former husband, Stephen, respondent failed to appear at the Section 341 meeting of creditors in their case, failed to respond to telephone calls and requests from the United States trustee for information about the Bryants' case, failed to appear at a hearing before the bankruptcy court to show cause why he should not return the fees paid to him by the Bryants, and failed to appear before the bankruptcy court on an order to show cause why sanctions should not be imposed for his conduct. Ultimately the bankruptcy judge suspended respondent from practicing in the bankruptcy court....

In the summer of 1994, respondent appeared in common pleas court on behalf of Steven Kippenberg and filed a motion to dismiss an action against him. Respondent, however, failed to appear at the hearing on the motion or at any of the three continued hearings. He also failed to appear at the hearing on whether he should be found to be in contempt. As a result, the common pleas court fined respondent $250 and sentenced him to a suspended sentence of one day in jail....

Respondent failed to respond to five letters from relator with respect to these grievances....

Respondent undertook to defend Melinda Mather on a driving-under-the-influence charge, but he failed to inform her of the final court date. When Mather failed to appear, a capias warrant for her arrest was issued....

Also, after Mather retained respondent in March 1994 to represent her in an employment discharge case, respondent failed to return her phone calls and failed to return her file....

Patricia Ditomaso retained respondent on a contingent-fee basis in April 1994 to represent her in a personal injury lawsuit and respondent failed to file the suit before the running of the statute of limitations....

Respondent also failed to cooperate with relator's counsel, Kevin Swick, in the investigation of the grievance filed by Mather....

The only evidence which the panel received in mitigation was an affidavit from a Kentucky physician to the effect that respondent suffered from severe depression and was not capable of performing as an attorney during April, May, and June 1994, and a July 7, 1994 affidavit of respondent filed in a Kentucky case to support his withdrawal as counsel in that matter, averring that he was suffering from manic depression, that he had moved his office to Covington, Kentucky, and that his secretary had quit.

*Id.* at 513–14. Given these facts, the Ohio Supreme Court concluded that Brown was guilty of multiple instances of misconduct, including incompetent and prejudicial representation, dishonesty, neglect, and failure to surrender property in the conduct of seven matters for six different clients, together with a failure to cooperate in disciplinary investigation. Based on this misconduct, the Ohio Supreme Court ruled that Brown "is hereby permanently disbarred from the practice of law in Ohio." *Id.* at 515.

Brown did not notify the KBA of his permanent disbarment, despite the requirement in SCR 3.435(1) that "[a]ny attorney subject to the provisions of this Rule shall, upon being subjected to professional disciplinary action in another jurisdiction, promptly inform the Bar Counsel of such action."

In 2007, Brown filed an application for reinstatement to the Kentucky Bar under SCR 3.510. In his application, Brown discussed the nature of the 1996 reciprocal discipline but failed to disclose the nature of the 1997 discipline in Ohio, apparently only citing the case number. Because of the length of his suspension in Kentucky, Brown would be required to proceed before the Character and Fitness Committee and to take a limited examination before he could be reinstated. Before that process could be completed, the KBA, based on its investigation into Brown's Ohio discipline, sought reciprocal discipline based on the Ohio Supreme Court's order of permanent disbarment against Brown, or, in the alternative, dismissal of Brown's application for reinstatement.

Rather than addressing whether reciprocal discipline should be imposed against Brown for his permanent disbarment in Ohio, this Court initially dismissed his application on the ground that he was ineligible for reinstatement under SCR 2.022(6), which provides in part, "Any applicant who is disbarred in another jurisdiction is not eligible for admission in Kentucky." The decision also relied in part on the Character and Fitness Committee's role as defined in SCR 2.040.

This Court subsequently granted Brown's motion for reconsideration in which he argued that the Court misapplied these rules. Specifically, he argued that SCR 2.022 governs the initial admission to the Kentucky Bar, not reinstatement, and that SCR 2.040 only governs the Character

and Fitness Committee's duties with regard to new applicants to the bar. He also noted that separate rules—SCR 2.300, 3.500, 3.505, and 3.510—govern the Character and Fitness Committee's investigations of and the testing of applicants for reinstatement to the bar, thus the restriction in SCR 2.022(6) was inapplicable to him.

As to the narrow legal issue of the applicability of SCR 2.022 and SCR 2.040 to applicants for reinstatement, this Court concluded that Brown was correct. The requirements and duties laid out in those rules govern applications of persons seeking *admission* to the Bar. Brown had already been admitted to the Bar; he had simply been suspended from practice and was seeking reinstatement. Because a separate set of rules has been enacted to govern applicants for reinstatement, it made little sense to apply the rules regarding new admissions to reinstatement applicants. That the rules include similar and potentially overlapping procedures (e.g., review by Character and Fitness, an examination, etc.) actually supported Brown's claim, since otherwise the rules in question would be redundant.

Based on this claim, this Court reopened his petition for reinstatement. However, given the reciprocal discipline rule, SCR 3.435, this Court, based on the KBA's previous motion, issued an Order requiring Brown to show cause why he should not be subject to discipline identical to that imposed on him by the Ohio Supreme Court.

As to the facts of misconduct found by the Ohio Supreme Court, "a final adjudication in another jurisdiction that an attorney has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this State." SCR 3.435(4)(c). As recounted above, the Ohio Supreme Court found Brown guilty of multiple, significant in-

stances of ethical misconduct in Ohio in the early 1990s.

■ The only question then is whether identical reciprocal discipline or a lesser sanction is warranted. Under the reciprocal discipline rule, this Court is required to "impose the identical discipline unless Respondent proves by substantial evidence: (a) a lack of jurisdiction or fraud in the out-of-state disciplinary proceeding, or (b) that misconduct established warrants substantially different discipline in this State." SCR 3.435(4). Brown has not alleged a lack of jurisdiction or fraud in the Ohio proceedings, thus SCR 3.435(b)(a) is inapplicable.

He has, however, argued in his response to the show cause Order that the misconduct found by the Ohio court warrants different discipline in Kentucky. Specifically, he argues that he should at most be subject to the maximum sanction recognized in Kentucky at the time of the 1997 Ohio decision, that is, disbarment for five years after which he may seek reinstatement. He also asks this Court to run that five-year suspension from the date of his Ohio disbarment. In making these claims, he notes that had reciprocal discipline been imposed in 1997, it would have been capped at five years' suspension. He also discusses his history of cocaine addiction and his recent efforts to seek treatment and to participate in KYLAP and peer-based substance abuse support programs.

While Brown's substance abuse problem is unfortunate and has no doubt contributed both to his past misconduct and past failures to participate in the disciplinary process, these facts simply do not militate against imposing reciprocal discipline. And though Brown has worked hard to control his addiction, seeking treatment and participating in KYLAP, this also is insufficient to counsel against reciprocal discipline. Reciprocal discipline is the default rule in Kentucky; imposing a different sanction than that imposed by another state is the exception, used primarily only where the other state has acted in an overly stringent or formulaic manner. Brown's permanent disbarment in Ohio, however, was based on his being found guilty of multiple ethical violations in *six* cases. These were not de minimis violations, and would require a substantial sanction in Kentucky if they were originally presented here.

More important is that Brown failed to comply with his duty under SCR 3.435 to inform the Bar of the discipline imposed by Ohio in 1997 and failed to disclose the nature of the 1997 Ohio discipline in his application for reinstatement. Seeking treatment, while laudable, simply cannot undo these failures, which alone might justify further discipline given that they demonstrate a habitual lack of candor on Brown's part.

However, the fact that a five-year suspension was the highest sanction available against Brown in Kentucky at the time the Ohio Supreme Court permanently disbarred him is determinative here. This Court agrees with Brown that the appropriate sanction is suspension for five years after which he may seek reinstatement as allowed by the rules in effect at that time. This penalty, being the maximum allowable at the time of the ethical violation, also subsumes any discipline that may have been appropriate for his lack of candor at that time.

■ This Court, however, cannot agree that such discipline should run from the time that the Ohio Supreme Court imposed its discipline. Because Brown was under a duty to notify Bar Counsel in 1997 of his disbarment in Ohio, reciprocal discipline proceedings could have been undertaken and discipline could have been im-

posed by this Court at that time. But Brown did not comply with that duty. Even upon seeking reinstatement in 2007, Brown still failed to disclose the nature of the discipline imposed by the Ohio Supreme Court, stating instead only the case number of the Ohio proceedings. Allowing any discipline now imposed to run from 1997, meaning a five-year suspension would have already expired, would allow Brown to effectively escape a sanction from this Court for his Ohio misconduct. Though Brown was not allowed to practice law in Kentucky at that time, as he had not yet sought reinstatement, there was a period of time beginning in 2000 when he could have sought reinstatement in Kentucky, since reciprocal discipline had not been imposed. That Brown did not take advantage of that opportunity does not diminish the fact that the larger part of his 1995 sanction, a five-year disbarment, had passed, and that he had gained a valuable right to seek reinstatement. To retrospectively apply a new, reciprocal five-year suspension to cover the time when Brown simply chose not to seek reinstatement would effectively reward him for his failure to notify Bar Counsel in 1997 of his Ohio disbarment and failure to act with complete candor in seeking reinstatement in 2007. Thus, this Court concludes that any new discipline must run from the date of this Order.

Accordingly, it is hereby ORDERED that:

(1) Respondent, Stanley Brown, is subject to reciprocal discipline for the misconduct found by the Ohio Supreme Court in 1997. Respondent's misconduct is established conclusively for purposes of disciplinary proceeding in this State. However, given the differences between the sanctions available at that time in Ohio and Kentucky, Respondent has shown that the misconduct established warrants substantially different discipline in this State.

(2) Respondent is suspended from the practice of law in Kentucky for a period of five years. The period of suspension shall commence on the date of entry of this Opinion and Order.

(3) In accordance with SCR 3.450, Respondent is directed to pay all costs associated with these disciplinary proceedings against him, if there are any, for which execution may issue from this Court upon finality of this Opinion and Order.

(4) Should Respondent currently have any clients, pursuant to SCR 3.390, he shall, within ten days from the entry of this Opinion and Order, notify all clients in writing of his inability to represent them, and notify all courts in which he has matters pending of his suspension from the practice of law, and furnish copies of said letters of notice to the Director of the Kentucky Bar Association. Furthermore, to the extent possible and necessary, Respondent shall immediately cancel and cease any advertising activities in which he is engaged.

ABRAMSON, CUNNINGHAM, NOBLE, SCHRODER, SCOTT and VENTERS, JJ., concur. MINTON, C.J., dissents because he would impose permanent disbarment.

Entered: May 21, 2009.

/s/ John D. Minton, Jr.
Chief Justice